**TRADERS & GENERAL INS. CO. v. TILLMAN.**

No. 5304.

Court of Civil Appeals of Texas. Texarkana.

June 17, 1938.

Rehearing Denied July 14, 1938.

permanent disability and for lump sum award. Litigants agreed that the claimant received a personal injury on April 15, 1936, while engaged in the usual course of his employment as an employee of the International Creosoting & Construction Company. They agreed on a compensation weekly wage rate of $7.92. Claimant obtained judgment for a lump sum, less a credit of fourteen weeks' compensation theretofore paid him by appellant. This appeal deals alone with obfuscated questions of procedure common to this class of litigation.

■ Appellant filed no answer to claimant's cross action. In view of the holding by the Supreme Court in Texas Employers' Ins. Ass'n v. Marsden, 114 S.W.2d 858, the assignments of error will be considered although no general denial was interposed.

■ Issue No. 1, answered by the jury in the affirmative, reads:

"Do you find from a preponderance of the evidence that John Tillman was totally disabled by reason of the injuries sustained by him on April 15, 1936?"

Appellant contends that said issue was upon the weight of the evidence and assumes the existence of the facts in dispute, to-wit: Injuries resulting in incapacity. This proposition is overruled. It was not disputed that claimant received injuries on above date. The litigants had agreed that he had received injury.. The judgment recites that appellant paid claimant fourteen weeks' compensation which was credited on the lump sum award.

■ Issue No. 2, likewise answered in the affirmative, reads:

"Do you find from a preponderance of the evidence that such total disability, if any you have found, will be permanent?"

Complaint is made that the issue is upon the weight of the evidence, and assumes that the claimant would receive some total disability. This is overruled. The question is framed so as to require an answer only in the event the jury had found claimant totally disabled.

Issue No. 8, answered in the affirmative, reads:

"Do you find from a preponderance of the evidence that unless a lump sum payment is made in this case, a manifest hardship or injustice will result to John Tillman?"

Lightfoot, Robertson & Gano, of Fort Worth, O. H. Atchley, of Texarkana, Dan P. Johnston, of Fort Worth, and King, Mahaffey & Wheeler, of Texarkana, for appellant.

Wm. V. Brown and Wm. Hodges, both of Texarkana, for appellee.

**WILLIAMS, Justice.**

This is a compensation case. The Industrial Accident Board awarded appellee, John Tillman, claimant below, compensation on the basis of total, permanent disability. Appellant, Traders & General Insurance Company, the insurer, appealed to the district court to have the award set aside. Claimant answered and filed a cross action, in which he set up claim for compensation on the basis of total,

In response to issue No. 7, the jury found claimant's disability was 100%. Upon the foregoing issues the court entered judgment as above indicated.

Issue No. 3, which was not answered by the jury, reads:

"From a preponderance of the evidence, for what length of time do you find that such total incapacity, if any, has or will continue?"

Special issues Nos. 4, 5, and 6 likewise were not answered by the jury. These issues dealt with partial disability following total disability, if any; if such partial disability, if any, would be permanent; if such partial disability, if not permanent, how long it would continue. In various propositions appellant attacks the action of the trial court in receiving the verdict and entering the judgment notwithstanding the jury did not answer these issues. The contention is made that where the evidence raises and makes issues of fact whether or not disability resulted from the alleged injuries, and as to whether or not such disability was total or partial, permanent or temporary, or would continue for some length of time, all these issues are required to be submitted to and determined by the jury before any lawful judgment can be entered awarding a recovery for compensation. This brings us a review of the evidence to ascertain if the issues Nos. 3, 4, 5 and 6 were raised.

On the day of the accident claimant was engaged in handling railroad cross ties, removing them from a stack into box cars, when a creosoted pine cross tie fell from a 32-foot stack, striking him on the back about 3 inches below his shoulder blade, knocking him flat upon the ground. He was rushed to a hospital. The blow broke his scapula bone and four ribs on the right side. At the time of the trial these bones had healed, except the ribs in growing together had overlapped from 3/4 to 1 inch. Reputable physicians who examined claimant a few months after the accident testified that the condition of his heart was bad, skippy, and beating irregularly, and at a fast rate. They attributed the bad condition of his heart to the injuries received on April 15th. They testified positively that claimant would never be able to do any manual labor, not even to take a long walk or sweep a floor. In their opinion, exertion on the part of claimant might cause death.

The testimony of claimant and his wife as to his physical condition was in keeping with the evidence above detailed. Claimant placed June 17th as the date he first noticed that his heart "had gone to the bad"; that on this date while on his way to the doctor's office he took violently sick and had to have help; that prior to his injuries he had suffered no pains in his heart and enjoyed good health. He engaged in no work after the accident and remained at home. Claimant had worked regularly for this employer for at least fifteen years up to the date of the accident. During this period of time he had handled from 800 to 1,000 cross ties per day, and in rush seasons worked at night and on Sundays. These ties each weighed 175 pounds and up. In the fall of the year prior to the injury, claimant, together with other employees, was examined by the creosoting company's doctors for physical ailments and he was passed. One of the company's doctors treated him for his injuries for fourteen weeks after the accident, but he did not testify in the case.

Appellant offered other reputable physicians who testified there was nothing wrong with claimant to keep him from working, and that he was not physically disabled. They testified positively that his disability was only mental or traumatic neurosis (hysteria) and nothing was wrong with his heart; that the broken bones had healed. They agreed with the other physicians that claimant's heart beat fast, irregular, and some skips. One of these physicians stated that the heart had a beat of 102 to 95 when it should not be over 65 or 70. They did not attribute the condition of the heart to the injuries. They testified that the medicine claimant was taking for his ailment when they examined him contained some caffein, and that caffein would produce the fast action of the heart. It was also their testimony that claimant had bad teeth, chryptic tonsils, and prostatitis, and these could likely have produced the condition of the heart. It is evident that the cause of the present condition of claimant's heart presented a contested issue. At appellant's request issues were submitted and answered by the jury that claimant was not suffering from heart trouble on and immediately prior to April 15th; and his present disability was not solely due to disease independent of alleged injury. In addition to this, at the request of appellant the court instructed the jury in making answers to

issues Nos. 1, 4 and 7, that they were to consider only the disability, if any, produced solely by the falling of the tie upon defendant and such diseases and infections as naturally resulted therefrom, if any, and not to consider any disability solely produced by and resulting from any prior heart or other disease, if any suffered by defendant.

There was only one other issue raised by this evidence. Was he totally and permanently disabled, or was he physically able to keep on with his work? Appellant's theory as presented was that his trouble was merely imaginary and that this man was then and there able to work. The testimony offered by appellant was positive to this effect. The other theory offered by the claimant was likewise as positive that he was not able to work and never would be. We fail to discern from this record any evidence raising an issue that claimant was only partially disabled to work. No evidence was adduced that this man's heart would improve or heal over a period of time. All the physicians testified that there is no cure for actual heart trouble or a heart lesion.

Appellant's propositions 13 to 18, inclusive, deal with alleged improper argument of counsel. The opinion would be unduly prolonged to set out haec verba the argument complained of. These deal with remarks which we consider legitimate comments or deductions on the evidence introduced during the trial. Counsel developed the fact that this complainant had submitted to an examination lasting over six hours, and counsel went into detail concerning the various tests and examinations made. The physicians had testified that they were employed to make this examination by one of appellant's attorneys. There was testimony in the record that the employer in this case followed the practice of having doctors to make periodic physical examinations of its employees. When the attorney remarked that there existed an excess supply of labor at this time, surely this fact was already known to the jury. Claimant had testified that he then owed doctor, rental, drug, and grocery bills. Any citizen would know that there are other bills incident to living and keeping a home, and that, as a usual thing, lawyers are to be paid for their services. This argument complained of did not bring to the jury any information that had not already been disclosed to them by the evidence and the pleadings in the case.

In the 13th proposition we fail to see where the argument complained of was calculated to incite passion or prejudice. The import of the language used was an appeal for an unbiased and unprejudiced consideration of a negro's case by a jury composed exclusively of white men.

We deem it unnecessary to discuss the other propositions advanced.

Finding no error, the judgment of the trial court is affirmed.